**SIGNED.**

**Dated: February 23, 2010**



_____
**JAMES M. MARLAR**
**Chief Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>JOHN A. CHAVEZ and PAULA F. CHAVEZ,<br><br>                Debtors.<br><br>BRADEN TRUST and BRADEN FAMILY PARTNERSHIP dba Texas Hill Farms,<br><br>                Plaintiffs,<br>vs.<br><br>JOHN A. CHAVEZ and PAULA F. CHAVEZ,<br><br>                Defendants. | Chapter 7<br><br>No. 0:08-bk-18092-JMM<br><br>Adversary No. 0:09-ap-00128-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**MOTIONS FOR SUMMARY JUDGMENT** |

       Before the court is the Defendants' motion for summary judgment (DN 18), as well as the Plaintiffs' motion for summary judgment (DN 20). The motions were heard on January 29, 2010. The court has now considered the contents of the adversary file, as well as the law and rules in favor of the Defendants. As the relevant facts are not in dispute, the court may rule on the motions without need for a trial. FED. R. BANKR. P. 7056.

## **BACKGROUND**

At a period prior to the bankruptcy filing, Defendant John Chavez was an employee of the Plaintiffs. As an employee, Mr. Chavez rose to the level of general manager. He was never an officer, member, partner or principal in any Plaintiff entity. During the course of the employment relationship, Mr. Chavez misappropriated money or property belonging to Plaintiffs.

After terminating Mr. Chavez, the Plaintiffs commenced a state court action, in which Plaintiffs sought a money judgment. An arbitration occurred, the parties presented their evidence, and the arbitration panel ruled in favor of the Plaintiffs and against the Chavez'. Before the award could be confirmed by the Superior Court, however, Mr. and Mrs. Chavez filed a Chapter 7 bankruptcy proceeding.

The arbitration award was in the sum of $466,865. (Ex. A to Plaintiffs' Statement of Facts.)

## **THE BANKRUPTCY, AND NON-DISCHARGEABILITY ALLEGATIONS**

The Defendants filed their bankruptcy case on December 15, 2008. Within the appropriate time period, the Plaintiffs commenced this non-dischargeability action.

Plaintiffs' complaint alleges a single cause of action, that of breach of fiduciary duty-- specifically a defalcation or misappropriation of property-- which is actionable under a bankruptcy statute, 11 U.S.C. § 523(a)(4).

Defendant John Chavez was employed by Plaintiffs pursuant to an employment contract. (Ex. B to Plaintiffs' Separate Statement of Facts.) This contract provided that it was governed by the laws of the State of Arizona. (Ex. B, para. 15.) The contract also provided that Mr. Chavez was to "well and faithfully" serve Plaintiffs, in his capacity as "employee" and their capacity as "employer." (Ex. B, para. 3.A.)

## **PROCEDURE**

The Plaintiffs filed their complaint on February 4, 2009. After the Defendants' motion to dismiss was denied, an answer was filed. The complaint has never been amended, and Defendants now ask for summary judgment on the undisputed facts.

## **THE LAW**

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. Under Rule 56, the Court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R CIV. P. 56(c)(2).

### **1. § 523(a)(4)**

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny "[1] A debt is non-dischargeable under § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997).

A "defalcation" is the misappropriation of trust funds or money held in any fiduciary capacity, or the failure to properly account for such funds; it includes innocent defaults. *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996).

---

[1] The complaint does not specifically allege embezzlement or larceny.

The meaning of "fiduciary" in bankruptcy is a matter of federal law. *In re Hemmeter*, 242 F.3d 1186, 1189 (9th Cir. 2001). "Fiduciary" in the bankruptcy discharge context includes relationships involving express trusts, but excludes trusts *ex maleficio, i.e.,* trusts that arise by operation of law upon commission of a wrongful act. *Id.* (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). In other words, debtor must have been a "trustee before the wrongdoing and without reference to it." *Lewis,* 97 F.3d at 1185 (citing *Davis*, 393 U.S. at 333, 55 S.Ct. at 154); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986). While the definition includes statutory trusts which meet certain requirements, it does not include constructive, resulting and implied trusts. *Hemmeter, 242 F.3d at 1189-90 (*citing *In re Pedrazzini*, 644 F.2d 756, 758-59 (9th Cir. 1981)).

Accordingly, the Ninth Circuit has "adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4)." *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003). The "broad general definition of fiduciary –a relationship involving confidence, trust and good faith--is inapplicable in the dischargeability context." *In re Short*, 818 F.2d 693, 695 (9th Cir.1987); *Lewis,* 97 F.3d at 1185; *In re Evans*, 161 B.R. 474, 477 (9th Cir. BAP 1993). "This circuit requires that for the purposes of § 523(a)(4) the debtor must have been *a trustee in the strict or narrow sense* through an expressed or technical trust." *Banks v. Gill Distrib. Centers, Inc.*, 263 F.3d 862, 871 (9th Cir. 2001) (finding that attorney was a fiduciary to client in relation to client trust account holding settlement funds) (emphasis supplied); *Lewis*, 97 F.3d at 1185.

An express trust has been described as follows.

> The general characteristics of an express trust are 1) sufficient words to create a trust; 2) a definite subject; and 3) a certain and ascertained object or res. *The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust.*

*Pedrazzini*, 644 F.2d at 758 n.2 (quoting *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir. 1976)) (emphasis supplied) .

State law is to be consulted "to ascertain whether the requisite trust relationship exists." *Cantrell*, 329 F.3d at 1125 (citing *Lewis*, 97 F.3d at 1185, and *Ragsdale*, 780 F.2d at 796).

Both statutory and case law can give rise to a trust within the meaning of § 523(a)(4). *In re Stanifer*, 236 B.R. 709, 715 (9th Cir. BAP 1999) (examining fiduciary duty imposed on partners and holding that trust existed between spouses and their obligations to account for community property). For example, Ninth Circuit courts have applied a combined statutory and case-law analysis to determine that licensed real estate brokers as well as securities brokers, in California, are fiduciaries for purposes of § 523(a)(4). *See Niles*, 106 F.3d at 1459 ); In *re Woosley*, 117 B.R. 524, 529 (9th Cir. BAP 1990); *In re Scheuer*, 125 B.R. 584, 592 (Bankr. C.D.Cal. 1991). The Ninth Circuit Court of Appeals, in *Lewis*, consulted Arizona case law to determine that individual partners stood in a fiduciary relationship with one another. 97 F.3d at 1186.

In Arizona, corporate directors and officers and shareholders that have the ability to control a corporation owe a fiduciary duty to the corporation and other shareholders. F.D.I.C. *v. Jackson,* 133 F.3d 694, 703 (9th Cir 1998) (citing cases); *Mims v. Valley Nat'l Bank*, 14 Ariz. App. 190, 192, 481 P.2d 876, 878 (App. 1971); *Kadish v. Phx.-Scotts. Sports Co.*, 11 Ariz. App. 575, 578, 466 P.2d 794, 798 (App. 1970). Moreover, this fiduciary status meets the requirements of federal law. *Jackson*, 133 F.3d at 703; *Kadish,* 11 Ariz. App. at 579, 466 P.2d at 798; *In re Sullivan*, 217 B.R. 670, 675-76 (Bankr. D. Mass. 1998) (applying Arizona law, citing cases, and holding that "[i]n Arizona, it is well established that a director or officer of a corporation owes a fiduciary duty to the corporation," and such duties satisfy the element of fiduciary relationship for purposes of § 523(a)(4)). Business partners also owe a fiduciary duty to one another that is actionable under § 523(a)(4). *Lewis,* 97 F.3d at 1186.

Arizona case law also applies the Restatements of law, which impose general duties of loyalty upon agents toward their principals. *See, e.g.*, *McCallister Co. v. Kastella*, 170 Ariz. 455, 825 P.2d 980 (App. 1992); *Home Builders Ass'n of Cent. Az. v. City of Goodyear,* 223 Ariz. 193, 221 P.3d 384 (App. 2009); RESTATEMENT (SECOND) OF AGENCY § 387 (1958); RESTATEMENT (THIRD) OF AGENCY §§ 1.01, 8.01 *et seq.* (2006).

Plaintiffs cite to the body of Arizona case law which imposes a fiduciary duty on a general manager of a company. *See Mohave Elec. Co-op., Inc. v. Byers*, 189 Ariz. 292, 307, 942 P.2d 451, 466 (App. 1997) (finding that the assistant general manager, who supervised the accounting and finance departments, breached her "independent fiduciary duty" to her employer as well as her employment contract). The court in *Mohave Electric* further held that the general manager and assistant general manager owed their employer "fiduciary duties including honesty, loyalty, fair play, fair dealing and good faith." *Id.* (citing *Kastella*, 170 Ariz. at 457, 825 P.2d at 982). *See also Fernandez v. Garza*, 88 Ariz. 214, 220, 354 P.2d 260, 264 (1960) ("a managing *partner* occupies a position analogous to that of trustee . . ") (emphasis added).[2] Plaintiffs also cite cases, from other circuits, where corporate presidents or general managers were determined to be fiduciaries under federal law. *See, e.g., In re Cummins*, 166 B.R. 338, 354 (Bankr. W.D. Ark. 1994).

However, no Arizona case, nor Ninth Circuit case applying Arizona law, has been cited or found which has the identical factual situation for the precise issue here: whether an employer-employee relationship, even when the employee is also the general manager, creates a fiduciary relationship that is actionable under § 523(a)(4).

Defendants maintain that a principal-agent relationship is a contractual relationship and does not rise to the level of an express trust. They argue that the Ninth Circuit has rejected contractual relationships as express trusts in *Pedrazzini*. There, a general contractor was hired by a homeowner to build a swimming pool. He diverted some of the funds intended for completion of the project. In the contractor's subsequent bankruptcy case, the homeowner sued for non-dischargeability of the debt under § 523(a)(4). The Ninth Circuit affirmed the bankruptcy court's determination that the contractor was not a fiduciary under federal law. *Id.,* 644 F.2d at 758-59.

*Pedrazzini* is consistent with federal law, applied in other cases involving strictly contractual relationships, where the "trust" actually arose *upon* the wrongdoing. *See Chapman v.*

---

[2] In *Garza,* the Arizona Supreme Court found that partners have a duty to account for proceeds of partnership property. 88 Ariz. at 219, 354 P.2d at 264. However, in our case, the arbitrator denied a claim for an accounting. *See* Arbitration Award ¶ 15. It is unclear whether there is any significance to that factual distinction.

6
Case 0:09-ap-00128-JMM    Doc 40    Filed 02/23/10    Entered 02/24/10 11:14:43    Desc
Main Document    Page 6 of 11

*Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844) (debtor-creditor relationship between purchaser and seller of 150 bales of cotton); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (debtor-creditor relationship between a car dealer and finance company); *Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980) (debtor-creditor relationship between home contractor and home purchaser); *In re Heilman*, 241 B.R. 137 (Bankr. D. Md. 1999) (same).

Courts in other jurisdictions have found that "[f]iduciary capacity within the meaning of section 523(a)(4) may be found in an employment relationship." *In re Golden*, 54 B.R. 957, 964 (Bankr. D. Mass. 1985). In *Golden*, the court held that a department manager who obtained unauthorized kickbacks was the fiduciary of his employer where the manager "occupied a position of trust, was in control of corporate property, and was given responsibility for maintenance and disbursement of corporate funds to vendors." *Id.*; *see also Gen. Ins. Co. of America v. Klein,* 517 S.W.2d 726, 729 (Mo. App. 1974); *In re Entrekin*, 40 B.R. 435 (Bankr. S.D.Fla. 1984) (debtors employed as computer programmers who controlled disbursement of their employer's cash flow were found to be fiduciaries under § 523(a)(4)). Some courts have opined, generally, that "an employee can be found to have acted in a fiduciary capacity under § 523(a)(4) if that employee occupies a position of trust within the scope of his or her employment," *Sullivan*, 217 B.R. at 676 (citing *Golden* and finding that a factual issue existed as to fiduciary status of Debtor-wife), and that the fiduciary element may exist in situations involving a "difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter," such as lawyer-client, or managing partner and limited partner. *Matter of Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994)

Overall, however, courts continue to follow the narrow approach and require a definable trust res. *See*, e.g., *In re Garver*, 116 F.3d 176, 180 (6th Cir. 1997) ("[T]the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."); *In re Bigelow,* 271 B.R. 178, 187 (9th Cir. BAP 2001) ("[A]ttorney-client relationship may rise to the level of a fiduciary relationship for purposes of § 523(a)(4) *if there are client trust funds involved*") (emphasis added); *In re Sparrow*, 306 B.R. 812 (Bankr. E.D. Va. 2003) (holding that, while Virginia law

imposed a duty of loyalty on the debtor/employee as agent, there was no fiduciary relationship within the meaning of § 523(a)(4), which required the existence of an express or technical trust); *In re Marderosian*, 186 B.R. 341 (Bankr. D. R.I. 1995) (insurance agent who issued "clean" title insurance policies to purchasers of property upon which there were preexisting mortgages, and misappropriated funds *held in escrow accounts* entrusted to him for purposes of paying off existing mortgages, was a fiduciary under § 523(a)(4)); *In re Trovato*, 145 B.R. 575, 580 (Bankr. N. D. Ill. 1991) ("Agency is not the kind of 'fiduciary capacity' that gives rise to nondischargeability under Section 523(a)(4)."); *cf. Marchiando*, 13 F.3d at 1116 (debt arising from store owner's failure, as a lottery ticket agent, to remit ticket sale proceeds to the State was dischargeable).

Plaintiffs further cite to *Stanifer* for the proposition that express agreements between parties, such as the employment contract in this case, can create the requisite fiduciary relationship. The Ninth Circuit Bankruptcy Appellate Panel, in *Stanifer,* reiterated the narrow definition of a fiduciary under Ninth Circuit law as well as the standard characteristics of an express trust, which it stated "is created by an agreement between two parties to impose a trust relationship." 236 B.R. at 714. The BAP did not abrogate the requirements that an express trust contain "(1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res." *Id.* Nonetheless, that case addressed a novel factual situation where a former wife sought to determine that the former husband's debt for failure to pay her a portion of his community property pension benefits was non-dischargeable. The BAP concluded that California statutory and case law established a sufficient "trust" and fiduciary relationship between spouses in regard to their community property. *Id.* at 719. The Court is not persuaded that *Stanifer* would support the same finding in the case of an employee-employer relationship.

The foregoing discussion illustrates just how flexible the term "while acting in a fiduciary capacity" has become across the circuits. But, in the end, this court must of course follow the path laid out by the Ninth Circuit. And that path is a conservative one, requiring some sort of actual trust relationship, not just a generalized duty of loyalty. Even the Arizona cases recognize distinctions--not appearing in this case--which carry more responsibility than that of an employee to his/her employee.

The issue is one of first impression for this court, and perhaps one for the reported cases in the Circuit. In its review of the cases, this court must conclude that 11 U.S.C. § 523(a)(4) would not, under current Ninth Circuit law or Arizona law, rise to the level--for a bankruptcy non-dischargeability action--of including an employee-employer relationship.

Therefore, Defendants' motion for summary judgment on that issue will be granted.

### 2.  Section 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  This court looks to state law to determine whether an act falls within the tort of conversion, *In re Jercich*, 238 F.3d 1202, 1206 and n.16 (9th Cir. 2001). To prove conversion in Arizona, a party must show "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, ¶11, 91 P.3d 362, 365 (App.2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (App.1990)).

However, a technical conversion under state law is not necessarily a "willful and malicious injury." *In re Peklar*, 260 F.3d 1035, 1039 (9th Cir. 2001). Federal law requires more. In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate and intentional *act* that leads to injury." *Id.*, 523 U.S. at 61, 118 S.Ct. at 977.

The difficulty with attempting to apply this section of the Bankruptcy Code to this case is that it was never pled as a cause of action. The Plaintiffs' entire case, in bankruptcy court, is based on a theory of fiduciary capacity under 11 U.S.C. § 523(a)(4).

Even though the court, in its ruling on Defendants' motion to dismiss, mentioned § 523(a)(6) as being, possibly, included within the four corners of the complaint, closer inspection now reveals that such theory of liability was not actually articulated. In a Rule 12(b)(6) motion, the only legal concern is to ascertain whether a complaint, on its face, <u>states</u> a claim. The court's

passing comment in its order (DN 9), was not a ruling on whether that count was actually contained in the complaint. The focus, at a Rule 12(b)(6) hearing, is different than what is required in resolving a motion for summary judgment.

Even so, Plaintiffs never moved to amend their complaint to include a willful and malicious injury allegation under § 523(a)(6), and thus, the court must now find that they cast their net solely on § 523(a)(4) grounds.

## **RULING**

For all of the reasons set forth above, the court will enter an order granting Defendants' motion for summary judgment.

It is also appropriate, at this stage, to address and dispose of Defendants' "counterclaim." Defendants have no legal standing, in a Chapter 7 proceeding, to seek compensatory damages in response to an action for non-dischargeability. This is because, in a Chapter 7 case, the representative of the "estate" is the Trustee. 11 U.S.C. § 323. The Defendants no longer have an independent right to seek damages. They have surrendered those rights to the Trustee.

Therefore, the counterclaim will be dismissed.

This case has now been fully resolved, as to all issues and all parties. A separate final judgment will be entered. FED. R. BANKR. P. 9021.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following:

Steven M. Cox, Attorneys for Debtors/Defendants

Don B. Engler, Attorney for Debtors/Defendants

A. James Clark, Attorney for Plaintiffs

Office of the United States Trustee

Deborah Bryant, Trustee